## BUCK KIDWELL v. THE STATE.

*No. 1263.        Decided December 4th, 1895.*

### 1. Murder—Evidence—Deceased's Clothing—Identification of.

On a trial for murder, where the State produced the clothing of the deceased, to show the position of the wounds on the clothing, and, in connection therewith, introduced evidence of the officer having them in charge, to the effect, that when the bloody clothing was received by the witness, the naked body of deceased was being prepared for burial; that the clothing was handed to him by the party having them in possession, and that at that time a knife, which was shut up, was in the pants pocket. Held: There being no suggestion that the evidence was fabricated, the clothing was sufficiently identified as that of deceased, and the court did not err in admitting the evidence.

### 2. Same—Proof of the Reputation of a State's Witness.

On a trial for murder, where defendant proved that the main State's witness had admitted, just after the homicide, that he had killed the deceased, and that defendant had nothing to do with it; and said State's witness, at the trial, testified, that he had taken the killing upon himself under threats from, and through fear of defendant

and his confederate, who had, in fact, committed the homicide. Held: Competent for the State to prove the general reputation of said witness as a peaceable, quiet man, for the purpose of controverting the theory of the defense, that he, the said witness, had committed the homicide.

**3. Same—Placing all Eye-Witnesses on the Stand.**

It has never been the rule, in this State, to require the prosecution to place upon the witness stand, all the eye-witnesses to a transaction. The rule is, that it is properly within the discretion of the prosecuting officer to produce such witnesses, and only such as he thinks best. Following, Reyons v. State, 33 Tex. Crim. Rep., 143.

**4. Same—Accomplice Witness—Circumstantial Evidence—Charge.**

The fact, that the only witness to a homicide is an accomplice, furnishes no reason why a charge should be given on circumstantial evidence. And where it is apparent that the homicide was committed in the dark—that it was committed by two parties acting together, and both equally guilty—that the accomplice was in juxtaposition to the parties, but may not have seen who actually inflicted the fatal stabs and blows. Held: Not a case to require a charge on circumstantial testimony.

**5. Manslaughter—Provocation—Charge.**

Where the provocation for a homicide, if any, was an assault by deceased, in a sudden quarrel, on defendant's friend and accomplice, the court, in its charge on manslaughter, did not err in confining and restricting the provocation to what occurred at the time of the killing.

**6. Murder—Self-Defense—Charge.**

On a trial for murder, where, under the State's evidence, the case is, at least, one of murder; and, under the evidence of defendant, he had nothing to do with the homicide. Held: That the court properly refused to charge on self-defense.

APPEAL from the District Court of Bosque.    Tried below before Hon. J. M. HALL.

This appeal is from a conviction for murder in the second degree, the punishment assessed being a term of ten years' imprisonment in the penitentiary.

This is a companion case to Moffatt v. State, ante p. 257, and the material facts in the case will be found recited in the opinion of the court in that case.

,    No additional statement is necessary.

*Lockett & Kimball*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant in this case was convicted of murder in the second degree, and his punishment assessed at ten years' confinement in the State penitentiary, and from the judgment and sentence of the lower court prosecutes this appeal. This is a companion case to that of Joe Moffatt v. State, ante p. 257, and, for a full statement of the facts attending the homicide, reference is made to that case. Appellant complains, in his second bill of exceptions, that the State's witness, W. A. Boyd, was permitted, over his objection, to state that a pair of pants handed to him by a Mexican, were the pants of the deceased, Pratt, and had a knife in the pocket of same, which was shut. The ground of appellant's objection to this testimony was that the pants were not sufficiently identified as those belonging to the deceased, Pratt, and a similar objection to the knife. The bill of exception shows that

the witness, Boyd, went to the place where Pratt's body was being prepared for burial, and there saw the naked body, and a Mexican there with the clothes of deceased. Boyd asked for the clothes of deceased, and the Mexican handed them to him; being the bloody shirt produced in evidence, and the pair of bloody pants. The object of this testimony on the part of the State was to show that the deceased had not used his knife during the conflict in which he was killed, and to show the position of wounds on the clothing. The contention of appellant is that the articles were not sufficiently indentified as those the deceased had on at the time of the difficulty. In this case the body of the deceased had been taken to the house of Moffatt, the appellant's codefendant, and was, at the time of Boyd's visit, being prepared for burial. The officer came just after he was being undressed for that purpose, and, on request, the Mexican handed him the clothes asked for. There is no suggestion that said evidence was fabricated, or even that there was an opportunity for such fabrication. The circumstances of this case were such as to afford no doubt that the clothes handed the officer were those of deceased, and there was no reversible error in the ruling of the court admitting this testimony.

The appellant complains in the next bill of exceptions that it was error for the court to have permitted the State to introduce evidence that the State's witness, Jim Lay, had a good reputation, in the community in which he lived, as being a quiet and peaceable man. The theory of appellant in this case was that Jim Lay had committed the homicide, and that this appellant had nothing to do with same, and evidence was adduced by the appellant for the purpose of establishing this view of the case. The State's theory, on the other hand, was that Jim Lay admitted he did the killing, but was merely a tool of the appellant and his codefendant, and at their instance had taken upon himself the killing of the deceased, Pratt, and that the fact was that Kidwell and Moffatt were the guilty parties. The testimony of the witness as to the general reputation of Lay as being a peaceable and quiet man, we think, was admissible for the purpose of controverting the theory insisted upon by appellant,—the theory of the State being that Lay did not kill Pratt, but that Kidwell and Moffatt did,—as also to show that it was likely true that; in originally assuming the act of the killing of Pratt, he did so, as testified by him, because he was apprehensive that the appellant and his codefendant might carry out their threat to take his life.

In the next bill of exceptions the appellant insists that the court committed an error in failing to require the State to put the witness, Albert Lopez, on the stand, he being present in court at the time, and appellant presented to the court his written motion that said witness be placed on the stand as a State's witness. This witness was present at the homicide. We desire to settle this question in such a manner as will prevent its arising again in any other case. At common law, at one time, the party accused of a felony was not permitted to introduce witnesses at all. Queen Anne, however, instructed her judges to permit the accused

to introduce witnesses in their behalf. Before this was permitted, the rule sprang up that the prosecution must introduce all of the eye-witnesses to the transaction. This was a just rule, because the accused could not introduce witnesses at all, and it would have been the height of tyranny to have permitted the government to select what witnesses it would introduce. When the accused was permitted to introduce witnesses, the reason of the rule requiring that the government should introduce all the witnesses to the transaction ceased. The reason ceasing, the rule must cease, and we agree with Mr. Bishop, who says: "In general, a party, whether State or defendant, is permitted either to. call or decline to call any competent witness. Some courts deem that the prosecuting officer ought, in murder or the like crimes, to call as witnesses all who were present at the transaction, whatever be the nature of their testimony. Others regard it properly within his discretion to produce such witnesses, and such only, as he thinks best." With the last-mentioned rule we concur, and we will add, if it has ever been the practice in this State to force the State to call all the witnesses to the transaction, we are not aware of such practice. Such a rule would work serious injury to the State, and tend to confusion. Reyons v. State, 33 Tex. Crim. Rep., 143.

The appellant in this case asked a charge on circumstantial evidence, and contends in that connection that, although the accomplice was present and saw the killing, yet it being dark, and at the very time of the killing he being some little distance from the parties when it occurred, it was such a case as required of the court a charge on circumstantial evidence. The fact that the witness to the transaction was an accomplice, furnishes no reason why a charge should be given on circumstantial evidence, and at the time the fatal stroke was given he was so near and in such juxtaposition, though he may not have seen which one of the two parties inflicted the stabs and blows, several of which were fatal, yet, in the view we take of the case, it would make no difference, as to their guilt, which one may have caused the wounds. What we have said with reference to the last bill of exceptions applies to appellant's next bill of exceptions, No. 8, in the record.

The appellant also urges as a cause for the reversal of this case, the refusal of the court to give the charge asked by him on manslaughter. The court gave a charge on manslaughter, but appellant contends that said charge is too restrictive, in that it confines the provocation to having occurred at the time of the killing. So far as the record shows, there was no anterior provocation between the parties. Indeed, the record shows that they were on friendly terms. If there was any provocation at all in the case, it was the assault by the deceased on Lay, which, according to some of the testimony, occurred in a sudden quarrel. Lay, it appears, was knocked down, and the deceased jumped on him. The court in its charge confined provocation to the time of the difficulty, and we do not understand that the charge of the court necessarily restricted the jury from looking at all the facts and circumstances in evidence that

there occurred, and it was not necessary for the court to give the special charge asked by appellant. The appellant also asked a charge on self-defense, based on the right of appellant to interfere in the conflict between deceased and Lay. We have examined the record carefully, and fail to find anywhere evidence upon which the theory of self-defense can be predicated in this case. If we look at the testimony of the State, the case was at least murder. If we look at the testimony of the appellant, he is guilty of no offense, as he had nothing whatever to do with the homicide; and the court gave a pertinent and lucid charge on that theory, and appellant makes no complaint as to same. We find no error in the record requiring a reversal of this case, and the judgment is affirmed.

*Affirmed.*