E. F. Owen v. The State.

No. 12632.  Delivered February 26, 1930.
Rehearing denied April 2, 1930.
Reported in 26 S. W. (2d) 251.

The opinion states the case.

*Lewis M. Seay* of Groesbeck, and *N. T. Stubbs* of Johnson City, for appellant.

*Sam McCorkle* of Mexia, District Attorney, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, forgery of land title; penalty, five years in the penitentiary.

W. S. Potter, residing in Tippecanoe County, Indiana, was the owner of a large tract of land in Houston County, Texas. He died May 3, 1928. On July 12, 1928, a deed purporting to be signed by W. S. Potter, dated April 25, 1924, and purporting to have been acknowledged before W. O. McElroy, Notary Public, on the same date, was filed for record by the County Clerk of Houston County, Texas. This conveyed to appellant, E. F. Owen, a tract of land hereinafter described.

It was the theory of the State that J. H. Byers, G. T. Gardner, W. O. McElroy, R. O. Kerzee and appellant had formed and executed together a conspiracy to place of record the title to this land in appellant by the forgery of Potter's name to the deed mentioned above. Both McElroy and Kerzee testified for the State. The substance of McElroy's testimony was that Gardner approached him with a proposition of having him affix an acknowledgment to the above mentioned deed and that he did so on the 27th day of June, 1928, misdating same so as to make it appear as of date April 25, 1924; that Gardner told him it was a crooked deal but was safe; that for his part in the deal he received a deed to one hundred acres of land and fifteen dollars in money, together with an agreement that Gardner was to pay him two thousand dollars for his interest in the land. The deed signed by Gardner as well also as the agreement to purchase the land at a consideration of two thousand dollars were introduced in evidence. Several statements of an incriminating nature were testified to by McElroy as having been made by both Gardner and Byers, who it seems was an attorney in the town of Mexia. The substance of Kerzee's testimony was that Gardner first approached him toward the latter part of May, 1928, in the town of Mexia, asking him how he would like to have two hundred and fifty acres of land. "He said he wanted me to sign my name as a witness to a deed." Thereafter appellant approached him, who was then in possession of a deed from W. S. Potter to himself and at the instance of Gardner and appellant he signed such deed as a witness. After that appellant took possession of the deed. They afterwards met at Judge Byers' office some two or three times. Appellant said to this witness that the proposition was crooked but was safe. He also talked to Judge Byers about it, who likewise assured him it was a safe proposition but was a crooked deal. Afterwards a loan was attempted to be procured on this land by Gardner. The

original of the alleged forged deed could not be found. A certified copy of same was introduced in evidence. It was shown that W. S. Potter on the date the deed was actually acknowledged and witnessed was dead; that he was not in Texas in April, 1924, and had never been in Texas for about twenty years.

It further appears that appellant conveyed part of this land to Gardner retaining vendor's lien to secure notes in a large sum in the face of such conveyance and that such notes were afterwards transferred by appellant to J. H. Byers. Other incriminating facts appear not necessary to here detail.

We regard the evidence as sufficient both to show the commission of the offense in Limestone County and to corroborate the alleged accomplices.

The indictment is under attack upon two grounds: (1) That there is a repugnancy apparent on the face of the indictment in that the forgery is alleged to have occurred on or about the 27th day of June, 1928, while the deed set out in haec verba shows to be dated April 25, 1924; (2) that the description of the land is so vague and uncertain as to render the deed void as a conveyance without explanatory averments and which averments the State failed to make in the indictment.

This prosecution was under Art. 1006 of the Penal Code, which makes it a penal offense in substance to make, alter or forge or cause to be made, altered or forged or to in any way assist, advise or encourage the making, altering or forging of any deed in relation to or affecting lands or any interest in lands in this State with the intent to make money or any other valuable thing thereby, or with intent to set up a claim or title, or aid or assist any one else in setting up a claim or title to lands or any interest in lands, or to cast a cloud upon the title, or in any way injure, obtain the advantage of, or prejudice the rights or interest of, the true owner of lands, or with any fraudulent intent whatever. This article is followed in the same chapter by Art. 1010, which provides in substance that upon such an indictment, to warrant a conviction, it shall only be necessary to prove that the person charged took any one step, or did any one act or thing in the commission of the offense, if from such step, act or thing any of the intentions hereinbefore mentioned, or any other fraudulent intention, may be reasonably inferred; "nor shall it be any defense to a prosecution under this chapter that the matter, act, deed, instrument or thing was in law, either as to substance or form, void," or that the same was not in fact used for the

purpose for which it was made or designed; and it shall only be necessary in an indictment under this chapter to state with reasonable certainty the act constituting the offense, and charge, in connection therewith, in general terms, the intention to defraud, without naming the person or persons it was intended to defraud.

These two articles must be construed together. They have recently been construed in the case of Roberts v. State, 13 S. W. (2nd) 862. It was there held that it is not indispensably necessary that the instrument alleged to be forged be sufficient on its face to convey the legal title. No other construction seems possible under the express terms of the statute quoted above. The appellant here contends that the law presumes that a deed was executed on the date which it bears and cites civil cases to support his contention. He reasons from this that since the law presumes the deed in question was dated April 25, 1924, there is an express repugnancy between it and the allegation that the deed was forged on or about June 27, 1928. We are not able to follow the logic of a proposition which asserts that a deed specifically alleged to be forged is presumed by law to be correct. The case of Hickman v. State, 72 S. W. 587, is cited by appellant in support of his contention. This was a prosecution under Art. 979, which charged the forgery of a negotiable instrument. There is a manifest difference between such an instrument and the one under discussion. The forgery of the two instruments constitutes entirely distinct offenses and relates to entirely different written instruments whose legal effect is governed by different rules. We will not here discuss the legal status of a misdated or undated negotiable instrument, as it seems unnecessary. A deed takes effect from the date of delivery and is good without a date or with a false or impossible date where the real date of delivery can be proven. 18 C. J. 187; Webb v. Huff, 61 Tex. 677. Its true date may be shown by parol, regardless of the written date thereon. Dunn et al. v. Taylor et al., 107 S. W. 952.

This land is described in the indictment as being:

"In the F DEL VALLE ELEVEN LEAGUE GRANT in Houston County, Texas, located about 15 miles Southwest of Crockett, on the Trinity River, known as the McGary & Gillespie lands and covers and includes all the lands and premises formerly owned by C. G. Fowler and Bert J. Kaull, and is the same land contracted for sale to E. F. Owen and Dee Black on November 20th A. D. 1923, there being 4465 acres, more or less, covered and conveyed hereby."

A deed is not necessarily void for uncertainty of description if the description of the premises conveyed is capable of being made certain. Lohff v. Germer et al., 37 Tex. 578. See also Harris v. Iglehart et al., 113 S. W. 170. If this description is not upon its face sufficiently definite, that it can be made so by extrinsic proof is too apparent to require discussion. In matters of description, the latin maxim "Id certum est quod certum reddi potest" applies. We have mentioned the rule pertaining both to the date and to the description of the premises in a deed to show that this instrument is not void upon its face for uncertainty of description and the date not being a vital part of the instrument, will not be considered as contradicting the date of the alleged forgery and particularly is this true when it is specifically alleged that the deed is a forgery and is false. It is earnestly argued that a deed utterly void upon its face could not be the subject of a forgery under Art. 1006, supra. A sufficient answer to this contention is that we have no such case here. Nor did we have such a question necessarily before us in the Roberts case, supra. In both the Roberts case and the instant case the alleged forged instruments were of that character which made extrinsic evidence admissible to give them life and vitality, if they were lacking in such. We do not decide that an instrument purporting to be a deed which is utterly void on its face and cannot be given life by parol evidence could be the subject of forgery. That question we will decide when it is presented. We are of the opinion that as against the objections urged, the indictment is sufficient.

The failure of the Court to charge on circumstantial evidence in response to proper exceptions by appellant is presented here as error. This case was reversed solely upon this ground on original hearing, but a careful reconsideration of the terms of Chapter 2, relating to forgery of land titles, has convinced us that we were in error. We followed Hanks v. State, 56 S. W. 922, Cox v. State, 244 S. W. 605, and other cases, all of which, however, were under the general forgery statute. Following a period of time after the Civil War the citizens of Texas were greatly harassed by land title forgeries, particularly committed by persons residing outside the confines of Texas. The exigencies of that time demanded more protection than the ordinary forgery statute afforded and when the Constitution of 1876 was made, there was placed in it a mandate to the Legislature, contained in the Sixth section of Art. 13, to pass stringent laws for the detection and conviction of forgeries of land titles. In response to this the first legislature meeting thereafter

enacted what is now the various articles contained in Chapter 2 of Title 14, P. C. The sweeping provisions of this statute have already been taken note of in this opinion. Art. 1006 of this chapter defined in part this new offense to be the falsely making or causing to be made or in any way aiding, assisting, advising or encouraging the false making of any deed, power of attorney, conveyance or title papers, etc., in relation to or affecting lands with the intent to make money or other valuable thing thereby or with the intent to set up a claim of title to lands or any interest in lands or to cast a cloud upon the title or in any way injure, obtain the advantage of or prejudice the rights or interests of the true owner of lands or with any fraudulent intent whatever. By including those who may advise or encourage, etc., the commission of the offense a class of persons was thus designated as principals who ordinarily might be only regarded as accomplices. This is followed by Art. 1010 of the same chapter, which contains language even more sweeping and provides in substance that upon an indictment under this chapter to warrant a conviction it shall only be necessary to prove that the person charged took any one step or did any one thing in the commission of the offense, if from such step, act or thing any of the intentions hereinbefore mentioned or any other fraudulent intention may be reasonably inferred. Ordinarily if the proof goes no further than to merely show the possession of a forged instrument, the false making of same by the accused is an inference resting upon this circumstance and demands a charge upon circumstantial evidence. In prosecutions of this character, however, if there is direct proof that the accused took any step or did any one thing in the commission of the offense from which a fraudulent intention could be reasonably inferred, the evidence is sufficient to convict by the express terms of Art. 1010, supra. There is direct proof in this case that Gardner, appellant's co-conspirator and co-actor in the commission of this offense procured, as detailed above in the statement of the case, the making of a false certificate of acknowledgment so that the instrument purporting to vest title in appellant might be recorded. It further appears by direct evidence that appellant was in possession of the forged instrument and in furtherance of the conspiracy and in aid thereof he secured the name of R. O. Kerzee as a pretended witness to the signature of W. S. Potter. The fact that this direct testimony comes from an accomplice witness does not make it necessary to charge on circumstantial evidence. Wampler v. State, 13 S. W. 144; Kidwell v. State, 33 S. W. 342; Branch's

P. C., Sec. 1874. As further illustrating the principal under discussion, we quote from a land forgery case:

"Under this article of the Code, and even at the common law, it is not required that the different parties to the perpetration of crime should be in fact together when the thing is done, to constitute them principals in the offense; and especially when the act or thing is composed of different parts, all uniting in one whole transaction. If there be a common object in view, in which the mind of each participant concurs, any act done in pursuance of the common design, and while it still is in existence, and which would, at common law, constitute such offender a co-conspirator, would, under the statute, render him a principal offender, and subject him to be prosecuted as a principal. So here, if there was a mutual agreement and understanding between the defendant and Young, or between the defendant and any other person, or any number of persons, to put on record a forged deed to a particular tract of land in Collin County, and, in order to consummate the common object, any act done by such other person in pursuance of the common design, and with knowledge of the common design, or with knowledge of the guilty intent of the defendant, would render such other person a principal offender, no matter where or how widely they were separated from each other." Heard v. State, 9 Tex. Crim. App. 22–23.

It being abundantly shown that appellant and Gardner, each with knowledge of the guilty intent of the other, were acting together with a common design in the commission of the offense, they are each bound by the acts of the other. There being direct evidence that each and both of these parties took steps and did acts and things in the commission of the offense with the same design and fraudulent intention, we are of the opinion that a charge on circumstantial evidence was not called for.

Other questions are attempted to be raised but cannot be considered. As an example of one of these, bill of exception No. 7 relates to the alleged error of the trial court in admitting over appellant's objection certified copy of deed to the land in question from the Sheriff of Houston County to W. S. Potter without filing such copy among the papers of the case for three days and giving notice as required by Art. 3226, R. C. S. 1925. This bill fails to contain a certificate of the trial court of the truth of the objections made, that is that a deed was not actually filed and notice given. This was indispensably necessary, as has been many times held. Branch's P. C., Sec. 209, and authorities there cited.

The state's motion for rehearing is granted, and the opinion delivered on the original hearing is withdrawn.

Believing the evidence sufficient and finding no errors in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In Special Charge No. 2 the court was requested in substance to instruct the jury that if there was a reasonable doubt as to the existence of a conspiracy between J. H. Byers and E. F. Owen to commit the crime of forgery, the jury should reject the evidence of declarations and acts "done and made by the said J. H. Byers and E. F. Owen when defendant was not present or knew of same." The form of the charge would justify its refusal. However, the State's evidence, which is uncontroverted in this particular case, seems conclusive of the acting together of Byers and Owen such as to establish a conspiracy to commit the crime of forgery. The principle in Chapman's case, 45 Tex. Cr. R. 479, is sound, but the facts calling it into operation are not analogous to the present case. The facts are more in line with English v. State, 34 Tex. Cr. R. 190; Richards v. State, 53 Tex. Cr. R. 400; Hays v. State, 90 Tex. Cr. R. 192. On the facts, the cases of Dobbs v. State, 51 Tex. Cr. R. 113; Mercado v. State, 258 S. W. 179 (180), and others cited by the appellant, are distinguished from those controlling in the present appeal.

The other questions raised in the motion for rehearing were fully discussed and the proper disposition made of them on the original hearing.

The motion is overruled.

*Overruled.*