Affirmed and Opinion filed March 16, 2004














Affirmed and Memorandum Opinion filed November 3, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00484-CR

____________

 

DeWAYNE DAVIS, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

_________________________________________________________________

 

On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 965, 578

_________________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant DeWayne Davis challenges
his conviction for injury to a child.  In
a single issue, he contends that the evidence presented at trial is legally and
factually insufficient to support his conviction.  We affirm. 

I.  Factual and Procedural Background

On October 20, 2003, at about 6:00
a.m., Tesheva Anderson left appellant’s apartment to catch the bus to
work.  At this time, Anderson and her two-and-a-half-year-old
son, Othay Anderson, lived with appellant, along with Crystal Cashel, a friend
of appellant’s.  As she frequently did, Anderson left her son at
the apartment in appellant’s care.  Appellant
would care for the toddler during Anderson’s shift
at the International House of Pancakes (“IHOP”), and after her shift, appellant
would bring the boy to Anderson.

A few hours after Anderson’s
departure on October 20th, appellant called Anderson at work and asked her to come home immediately.  She did not do so.  Appellant then called Anderson again a few hours later and informed
her that Othay had slipped in the bathtub and suffered a seizure after hitting
his head.  He further informed her that
the paramedics were on the way to the apartment.  Othay, who had suffered life-threatening
injuries, was life-flighted to Hermann
Hospital in Houston.  Appellant was the only person at home at the
time of the incident.

Anderson left work immediately upon
receiving appellant’s call and met appellant at the bus stop.  Anderson and appellant went to the hospital
together.  During the ride to the
hospital, appellant stated very adamantly that he did not put Othay on the
stove nor did he do anything to harm him. 
He also stated that he was sorry, and vowed to pass blame onto Cashel (who
was not home at the time of the incident) if anyone accused him of any
wrongdoing.  Appellant also informed Anderson that he did not
want to return to prison.  

            At
the hospital, appellant told investigating officers that he decided to give Othay
a bath because he had wet himself.  Appellant
testified that he left the room twice while the tub filled with water.  He returned the second time upon hearing
Othay scream and found him bleeding from the nose.  After arriving at the hospital, Othay was
examined fully for internal and external injuries.  It was discovered that Othay had suffered the
following injuries: (1) second degree burns on his feet, ankles and penis; (2)
bruises on his abdomen; (3) bruises to the interior portion of his liver; (4)
bruises to his internal abdominal wall; (5) gall bladder bruising; (6) a
duodenal contusion; (7) internal bleeding; (8) hemorrhaging in the brain; and
(9) retinal hemorrhaging.  As a result of
these injuries, Othay had to undergo two surgeries (one on his brain and one on
his abdomen) before being discharged from the hospital.  These injuries resulted in permanent physical
and mental impairment. 

            Othay’s
treating physicians confirmed that his injuries were not consistent with an
accident; rather, the injuries were inflicted intentionally, and were likely
the result of an intentional burning and violent shaking.  The doctors testified that based on their
examinations of the child, the injuries had been inflicted shortly before Othay’s
arrival at the hospital. 

            Appellant
was arrested and charged for the offense of injury to a child.  Appellant waived his right to a jury trial
and pleaded “not guilty” to this charge.  After a bench trial, the trial court found
appellant guilty and assessed punishment of 55 years in the Texas Department of
Criminal Justice, Institutional Division.  In his sole issue on appeal, appellant
challenges the legal and factual sufficiency of the evidence.

I.  Standard of Review

In
evaluating a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex.
Crim. App. 2000).  The issue on appeal is
not whether we, as a court, believe the State=s
evidence or believe that appellants= evidence
outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The trier of fact, Ais the
sole judge of the credibility of the witnesses and of the strength of the
evidence.@  Fuentes v. State, 991 S.W.2d 267, 271 (Tex.
Crim. App. 1999).  The trier of fact may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997). 

In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether the trier
of fact was rationally justified in finding guilt beyond a reasonable
doubt.  Zuniga v. State, 144
S.W.3d 477, 484 (Tex.
Crim. App. 2004).  A reviewing court may
find the evidence factually insufficient in two ways.  Id.  First, when considered by itself, the
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt.  Id.  Second, after weighing the evidence
supporting the verdict and the evidence contrary to the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id. at 484B85.  In conducting the factual-sufficiency review,
we must employ appropriate deference so that we do not substitute our judgment
for that of the fact finder.  Id. at 481B82.  Our evaluation should not intrude upon the fact
finder=s role as
the sole judge of the weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
In conducting a factual-sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  We apply the same standards of review regardless
of whether it is a verdict following a bench trial or a jury verdict.  See Collins
v. State, 901 S.W.2d 503, 505 (Tex. App.—Waco 1994, pet. ref’d).

II.  Analysis

In challenging the legal and factual
sufficiency of the evidence, appellant attacks the credibility of Anderson’s
testimony at trial and also contends that the State did not satisfy its burden
of proof because it failed to call Anderson’s young son (Othay) and the woman
living with appellant and Anderson at the time (Cashel) as witnesses at trial. 

            In
regard to Anderson,
appellant contends that her testimony should not have been considered because
she is an admitted liar.  However, it was
for the trial court, as trier-of-fact, to decide whether to believe Anderson’s
testimony.  The trial court is entitled
to believe all, none, or some of any of the witnesses’ testimony.  See
Saxton v. State, 804 S.W.2d 910,
914 (Tex.
Crim. App. 1991); Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981). 
We do not realign, disregard, or reweigh the evidence.  See
Rodriguez v. State, 939 S.W.2d
211, 218 (Tex. App.—Austin 1997, no pet.). 

Appellant’s contention
that the State did not satisfy its burden of proof because it failed to call Othay
and Cashel to testify at trial lacks merit. 
The State is not required to call a certain number of witnesses to prove
its case.  See Aguilar v. State, 77 (Tex. Crim. App. 1971).  It is only necessary that the proof be
present.  The Texas Court of Criminal
Appeals has addressed this subject in this way: 

In general, a party, whether state or defendant, is
permitted either to call or decline to call any competent witness. Some courts
deem that the prosecuting officer ought, in murder or the like crimes, to call
as witnesses all who were present at the transaction, whatever be the nature of
their testimony. Others regard it properly within his discretion to produce such
witnesses, and such only, as he thinks best. With the last-mentioned rule we
concur, and we will add, if it has ever been the practice in this state to
force the state to call all the witnesses to the transaction, we are not aware
of such practice. Such a rule would work
serious injury to the state, and tend to confusion.

 

Kidwell v. State, 35 Tex.
Crim. 264, 267, 33 S.W. 342, 343 (Tex. Crim. App.
1895).

The State presented several witnesses to prove its case
beyond a reasonable doubt—Anderson, the investigating officers, and Othay’s
treating physicians.  At trial, the
evidence of appellant’s guilt was overwhelming. 
See Kutzner v. State, 994
S.W.2d 180, 184 (Tex. Crim. App. 1999).  Anderson left Othay in
appellant’s care.  Appellant was the only
person home at the time Othay was injured.  Appellant called Anderson at work and informed
her that Othay had slipped in the bathtub and suffered a seizure after hitting
his head.  He informed her that the
paramedics were on the way to the apartment. 
During the ride to the hospital, appellant told Anderson that he did not put Othay on the
stove nor did he do anything to harm him. 
He also stated that he was sorry, and threatened to blame Cashel for any
wrongdoing, as he did not want to return to prison. 

            At
the hospital, appellant informed the investigating officers that he decided to
give Othay a bath because he had wet himself.  Appellant testified that he left the room
twice while the tub filled with water. 
He returned the second time upon hearing Othay scream and found him
bleeding from the nose.  Othay’s treating
physicians confirmed that the child’s injuries were not consistent with an
accident but appeared to have been intentionally inflicted and were likely the
result of an intentional burning and violent shaking.  The doctors testified that their examinations
indicated the injuries had been inflicted shortly before the child’s arrival at
the hospital. 

            The
surgeon who treated Othay testified that the abdominal and internal injuries
likely occurred around 10:00 a.m. that morning (shortly after appellant called Anderson the first time).  The neurosurgeon who treated Othay for his
brain injuries testified that the injuries likely occurred in the afternoon
shortly before Othay was life-flighted to the hospital.  This medical testimony, along with appellant’s
admission that Othay suffered his alleged “fall” in the bathtub around noon,
while no one else was present, established that appellant was the only person
with Othay at the time he was injured.  

The evidence is both legally and
factually sufficient to prove that appellant was the person who caused the
injuries to Othay.  The trial court had
before it the medical evidence that these injuries were intentional, not
accidental.  Moreover, the evidence also showed
that appellant was the only person with Othay at this time.  Finally, the trial court had before it the
inconsistencies regarding appellant’s version of how Othay was injured.  From this evidence, a rational factfinder could
have inferred that appellant intentionally caused injury to Othay, a child.  See
Guzman v. State, 20 S.W.3d 237,
240 (Tex.
App.—Dallas 2000), overruled on other
grounds, 85 S.W.3d 242 (Tex. Crim. App. 2002) (finding medical evidence,
appellant’s assertion that he was the only person with the child at the time of
injuries and appellant’s inconsistent statements about the origin of injuries
sufficient to support conviction); Goodman
v. State, No. 14-97-01027-CR, 2002 WL 1478594, at *3 (Tex. App.—Houston
[14th Dist.] June 27, 2002, no pet.) (not designated for publication) (holding
that evidence was sufficient to support defendant’s conviction for offense of
causing bodily injury to a child as emergency room nurse and physician who
examined child after defendant brought her to hospital testified that child’s
injuries were not accidental and were inconsistent with defendant’s
explanations of their cause, and that some injuries appeared to have been caused
by a person’s hand, and evidence showed that defendant was only adult present
when some of the injuries occurred); Gordon
v. State, __ S.W.3d __, 2005 WL
2158824 (Tex. App.—Fort Worth 2005, no pet) (holding that evidence was both legally
and factually sufficient to sustain conviction, when among other evidence, two
doctors opined that child’s injuries were consistent with being struck rather
than falling, doctor never wavered from his conclusion that child’s injuries
could only have occurred from being struck with or against heavy, flat object
rather than falling, even from a significant height).

A trier of fact can view inconsistencies
between a defendant’s version of the events with the medical evidence as
evidence of guilt.  See Kemmerer v. State, 113 S.W.3d 513, 516 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d).  The cumulative force of all
the incriminating evidence against appellant in this case provides legally and
factually sufficient evidence to support his conviction. See Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994).  Accordingly, we overrule appellant’s sole
issue. 

            The
trial court’s judgment is affirmed.

                                                                                    

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed November 3, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.

Do Not
Publish — Tex. R. App. P.
47.2(b).